IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JANET SYSUN                                                                    PLAINTIFF

            VS.                        Civil No. 2:15-cv-02012-MEF

CAROLYN W. COLVIN                                                      DEFENDANT
Acting Commissioner, Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Janet Sysun, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the Court must determine whether there is substantial evidence in the administrative record

to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.  Procedural Background

Plaintiff protectively filed an application for DIB on February 23, 2012, (Tr. 100) alleging

disability since September 2, 2011, due to alleged physical conditions, including fibromyalgia,

thyroid disorder, arthritis in her back, and cervical disc problems. (Tr. 101) Her application was

denied initially on December 18, 2012, and upon reconsideration on February 22, 2013. (Tr. 101-

105, 118-120) Plaintiff requested an administrative hearing (Tr. 123-124), and a hearing was held

on August 28, 2013, before the Hon. Harold D. Davis, Administrative Law Judge ("ALJ"). [1] (Tr.

---

[1] A previous hearing was held on June 1, 2011, before the Hon. Ronald L. Burton, Administrative
Law Judge, where Plaintiff's claims were denied. (Tr. 30-60)

61-99) Plaintiff was present and represented by her attorney, Mr. Fred Caddell. (Tr. 63) Plaintiff and a Vocational Expert ("VE"), Ms. Patty Kent, testified at the hearing. (Tr. 63-93, 93-99)

Plaintiff, born in 1959, was 53 years old at the time of this administrative hearing. (Tr. 67) She remained in school until the 11th grade, and she received her GED. (Tr. 67) Plaintiff worked as a manager and regional general manager for Long John Silver's fast food restaurant for a total of 14 years. (Tr. 71-72) Plaintiff testified that she was terminated from Long John Silver's due to a reduction in management, but stated that she was also having health issues at the time.  (Tr. 87-88)

Following the hearing, on August 28, 2013, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (Tr. 9-19) In this decision, the ALJ found Plaintiff last met the insured status requirements under Title II of the Act on December 31, 2015, her date last insured. (Tr. 11) He also found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of September 2, 2011, to the date of the decision. (Tr. 11) The ALJ determined Plaintiff had severe impairments of Musculoskeletal Disorder (Back Impairment, degenerative disc disease of the cervical spine), Neurological Disorder (Carpal Tunnel Syndrome, post bilateral release surgery), and Mental Disorder (Mood Disorder, depression/anxiety), but Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11-12)

In the decision, the ALJ considered the entire record and determined Plaintiff had the residual functional capacity ("RFC") to perform light work, except as follows:

> "claimant is able to frequently lift and/or carry ten pounds and occasionally twenty pounds, sit for a total of six hours in an eight hour workday, and stand and/or walk for a total of six hours in an eight hour workday. The claimant is able to perform work that includes simple tasks requiring simple instructions." (Tr. 14)

The ALJ further determined that Plaintiff was unable to perform any Past Relevant Work ("PRW"); was an individual closely approaching advanced age, on the alleged disability onset date; had at least a high school education and was able to communicate in English; and, that transferability of job skills was not material to the determination because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not Plaintiff had transferable job skills. (Tr. 17-18) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 18) With the assistance of a VE, the ALJ determined Plaintiff was capable of making a successful adjustment to other work and could perform the requirements of representative occupations such as: (1) small product assembler (DOT 706.687-022), of which there were 4,369 jobs in Arkansas and 294,999 in the national economy; (2) advertising material distributor (DOT 230.687-010), of which there were 1,163 jobs in Arkansas and 43,125 nationwide; and, (3) motel maid (DOT 323.687-014), of which there were 1,112 jobs in Arkansas and 132,291 nationally. (Tr. 18) The ALJ then concluded Plaintiff had not been under a disability, as defined in the Act, from September 2, 2011, the alleged onset date, through the date of the decision. (Tr. 19)

Plaintiff requested a review of the hearing decision by the Appeals Council (Tr. 4), which was denied on November 24, 2014. (Tr. 1-3) Plaintiff then filed this action on January 1, 2015. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 7) Both parties have filed appeal briefs (Docs. 9, 10), and the case is ready for decision.

## II.  Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4).  Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

## III.  Discussion

Plaintiff makes the following arguments on appeal: (1) that the ALJ erred in affording little weight to the treating physician's Attending Physician's Statement; (2) that the ALJ erred in failing to fully develop the record; (3) that the ALJ erred in his credibility determination; and, (4) the ALJ erred in his RFC determination.  (Doc. 9, pp. 10-19) The Commissioner counters that substantial evidence supports the ALJ's development of the record, the credibility determination, and the RFC determination.  (Doc. 10, pp. 3-18)

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### A.  Failure to Fully Develop the Record

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts.  *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.  *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).  While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is

required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B.  Credibility Determination

Plaintiff argues that the ALJ erred in his credibility determination.  In making a credibility determination, the ALJ is required to consider all the evidence relating to Plaintiff's subjective complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (*citing Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the *Polaski* factors.  In this matter, the ALJ evaluated Plaintiff's credibility, and in doing so, highlighted Plaintiff's medical history, prior to the relevant time period, primarily by her primary care physician, Dr. Terry Hoyt. (Tr. 15) Dr. Hoyt treated Plaintiff for various conditions, including sinus infections, headaches, leg cramps, menopausal symptoms, and carpal tunnel syndrome.(Tr. 15) Specifically, the ALJ also noted that by 2005, Plaintiff was given Hydrocodone for pain symptoms, along with Lorazepam for psychological symptoms.  (Tr. 15) A 2002 stress test showed normal results, confirmed by an echocardiogram that showed no substantial abnormalities. (Tr. 15, 343, 345) In 2003, radiological studies showed no cervical abnormalities.  (Tr. 15, 342, 403) The ALJ highlighted a March 15, 2005 MRI of Plaintiff's cervical spine, which showed a posterior osteophyte at C5-6 with neural foraminal encroachment, but no acute osseous abnormality.  (Tr. 15, 628-629)  Also, a small central and left posterior disc protrusion was identified at T3-4, but no abnormalities were observed in Plaintiff's lumbar spine. (Tr. 15, 628-629) The ALJ noted that no surgical treatment or physical therapy was recommended, that Plaintiff was given analgesics for pain, and that she continued to work full time.  (Tr. 15) Repeated testing on Plaintiff's lumbar and cervical spine in 2007 showed no fracture, subluxation or significant degenerative changes. (Tr. 15, 623-624)

Also prior to the relevant time period, in 2006, Plaintiff underwent right and left carpal tunnel release surgeries. (Tr. 15, 330, 331, 334) She reportedly did well with the surgeries and returned to work full time without any indication in the medical records that she had limitations from the surgery. (Tr. 15, 326-334) In 2006, Plaintiff fractured the fifth metatarsal in her right foot. (Tr. 15, 325) Similarly, she was treated, and again, returned to work full time without any limitations noted in the medical records. (Tr. 15)  In June 2009, Dr. Hoyt diagnosed Plaintiff with

fibromyalgia as a result of her complaints of aching and pain in her bones. (Tr.15, 471) However, radiological studies, examinations, and laboratory testing were generally negative. (Tr. 15) Plaintiff continued taking Hydrocodone and Lyrica.  (Tr.15)

On November 30, 2010, Dr. Hoyt completed a Medical Source Statement. (Tr. 15, 492-494) In this assessment, Dr. Hoyt opined that Plaintiff could sit for four hours, could stand for two hours, and could walk for one hour in an eight hour work day. (Tr. 15, 492) He also concluded that Plaintiff could frequently lift and carry up to five pounds, and could occasionally lift and carry up to ten pounds. (Tr. 15-16, 492-493) Another Medical Source Statement with similar results was completed by Dr. Hoyt in January 2013. (Tr. 15, 271-273). As noted by the ALJ, neither assessment was supported by Dr. Hoyt's treatment notes in that they included generally negative radiological studies and laboratory testing results. (Tr. 16)

Plaintiff also had a history of medical treatment for depression and anxiety. On September 22, 2010, Gene Chambers, Ph.D., conducted a Mental Diagnostic Evaluation of Plaintiff. (Tr. 16, 264) During the evaluation, Plaintiff shared that she was bullied by her boss at Long John Silver's, where she had worked for fourteen years.  (Tr. 16, 264) As a result, she had a panic attack, and was ultimately laid off work due to the conflict. (Tr. 16, 264) She stated that she continued to have trouble being around others, but had not had reoccurring panic attacks. (Tr. 16, 267-268) As a result of her evaluation and testing, Dr. Chambers concluded that Plaintiff's capacity to attend and sustain concentration on basic tasks was within normal limits; however, her ability to sustain persistence to complete tasks within an acceptable timeframe was somewhat limited by her panic symptoms. (Tr. 16, 267)  Dr. Chambers diagnosed Plaintiff with Panic Disorder with Agoraphobia and Dysthymia.  She was assessed with a GAF score of 60-70. (Tr. 16, 267)

During the relevant time period, a January 10, 2012 x-ray of Plaintiff's lumbar spine showed no acute process, despite continued complaints of pain. (Tr. 15, 310) Dr. Hoyt's January 24, 2012 office notes reflect that Plaintiff was scoped and her esophagus was "stretched." (Tr. 292) In August of 2012, plaintiff received a trigger point injection in her neck. (Tr. 277) In June of 2013, Plaintiff presented at the Fort Smith Arkansas Heart Center, where Dr. Ronald Kantola assessed her based on her complaints of exertional chest pain, elevated blood pressure and excessive daytime sleepiness. (Tr. 16, 632-633) Dr. Kantola recommended additional testing; however, the record does not demonstrate that Plaintiff underwent any additional tests. (Tr. 633) Also, at different times during the relevant time period, medical records indicate that Plaintiff received treatment from Dr. Hoyt for complaints related to fibromyalgia, fatigue, neck pain, and a hormone condition, as well as depression and anxiety. (Tr. 274, 275, 278, 281, 291, 292, 288, 289, 638, 641, 642)

Despite Plaintiff's continued complaints of pain, she testified at the hearing before the ALJ that she continued to provide cleaning services for Water Tech's office space, for which she received $650 a month. (Tr. 70-71) She noted in her testimony that she cleaned the space on Saturdays, she could go at her own pace, and her daughter also helped her with the work. (Tr. 81) In Plaintiff's February 5, 2013 Function Report, she stated that despite pain in her lower back and legs, she continued to work by cleaning two locations with her daughter. (Tr. 234) She stated that she was sometimes able to do dishes and laundry, as well as go to church on Sunday. (Tr. 234) She also was responsible for three children, ages 16, 17, and 7, and her older daughters assisted with the 7-year-old. (Tr. 235) She could prepare her own meals and often used a crockpot. (Tr. 236) She could drive a car, and shop in stores for groceries approximately every two weeks, often with her daughter's help. (Tr. 237). Plaintiff reported that she spent time with others, including her

sisters and her children. She also did not have trouble getting along with others, had never been fired for not getting along with others and got along well with authority figures.  (Tr. 239-240) She could sometimes follow written and spoken instructions. (Tr. 239) Plaintiff reported that she could pay bills, count change, and use a checkbook. (Tr. 237)

Although it is clear that Plaintiff suffers some degree of limitation, the Court finds that there are sufficient reasons in this case for determining that Plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible prior to October 18, 2013.  *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (credibility determination is entitled to deference if supported by good reasons and substantial evidence). Thus, the Court finds no basis for reversal on this issue.

### C.  RFC Determination

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the

claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007), *citing Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight ... [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 416.927(c). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." *Id.* at § 416.927(c)(2) (emphasis added).

In this matter, Plaintiff alleges that the ALJ failed by affording little weight to the treating physician's Attending Physician's Statement.  Dr. Hoyt completed two Medical Assessment Statements, one on November 30, 2010, and a similar one on January 30, 2013. (Tr. 271-273, 492-494) In those assessments, as noted previously, Dr. Hoyt opined that Plaintiff was able to sit

for three to four hours, stand for one to two hours, and walk for one hour in an eight hour work day. (Tr. 271, 492) Further, Plaintiff was able to frequently lift and carry five pounds and occasionally up to twenty pounds. (Tr. 272, 493) Dr. Hoyt's assessment indicated that Plaintiff's pain associated with her fibromyalgia was frequently severe enough to interfere with attention and concentration. (Tr. 273, 494) Dr. Hoyt also noted in his assessments that Plaintiff was unable to use both her right and left hands for pushing and pulling, and that there were safety concerns due to Plaintiff's poor work tolerance and poor stamina with work stress. (Tr. 271-272, 493-494)

When considering the weight to be given to Dr. Hoyt's assessments, the ALJ found them to be inconsistent with his own treatment records. (Tr. 16) Specifically, the record reveals that Dr. Hoyt was treating Plaintiff with Lipolean, B6 and B12 injections. (Tr. 284-286, 288, 290, 291, 305) He was also treating Plaintiff's cervical pain conservatively with pain medication and a trigger point injection in her neck. (Tr. 277) Dr. Hoyt prescribed Plaintiff Hydrocodone and Lyrica for her fibromyalgia symptoms, despite generally normal results from radiological studies, laboratory tests, examinations and spirometry testing. (Tr. 15) No other forms of aggressive treatment for Plaintiff's conditions, such as surgery, therapy, or referrals to pain management clinics or specialists, were reflected in Dr. Hoyt's treatment notes.[2] Impairments that can be

---

[2] The Court recognizes that fibromyalgia is elusive. Fibromyalgia involves pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues. Diagnosis is recognized by a typical pattern of diffuse fibromyalgia and nonrheumatic symptoms, such as poor sleep, trauma, anxiety, fatigue, irritable bowel symptoms, exposure to dampness and cold, and by exclusion of contributory or underlying diseases. See *The Merck Manual,* pp. 1369-1371 (16th Edition, 1992). Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character— multiple tender spots, more precisely eighteen fixed locations on the body that when pressed firmly cause the patient who really has fibromyalgia to flinch.

The Court has recently recognized such elusiveness in *Douglas v. Colvin*, 2016 WL 1048063, at *3 (W.D. AR., March 11, 2016), where the Court reversed and remanded for other reasons, yet noted that the ALJ failed to discuss the fibromyalgia diagnosis. In *Douglas*, there were medical records from a pain specialist, a rheumatologist and other examiners supporting Plaintiff's fibromyalgia diagnosis. *Id*. In the

controlled with treatment or medication are not disabling. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment controllable with treatment or medication is not considered disabling). Further, Dr. Hoyt's treatment records do not indicate that he placed limitations on Plaintiff's work activity as a result of her conditions. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

The ALJ also found Dr. Hoyt's assessment to be inconsistent with other medical evidence in the record. (Tr. 16) Specifically, during the relevant time period, Plaintiff underwent a MRI of her lumbar spine, which yielded normal results. (Tr. 310) Plaintiff also presented at the Arkansas Heart Center for chest pain, elevated blood pressure, lower extremity edema, and excessive daytime sleepiness; however, Plaintiff did not return for the recommended follow up testing. (Tr. 632-633) Moreover, Plaintiff underwent carpal tunnel release surgery in 2006, well before the relevant time period, and medical records indicate that Plaintiff's surgery was successful and that she returned to work without limitations. (Tr. 15, 326-331)

"Because [Dr. Hoyt's] determination contradicted other objective evidence in the record, the ALJ's decision to give less weight to [Dr. Hoyt's] determination was reasonable." *Renstrom v. Astrue*, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (citing *Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011). *See also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) ("[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation marks and citation omitted). Moreover, Dr. Hoyt's Medical Source Statement was a checkbox form. A treating physician's checkmarks on an MSS

_____

matter at hand, there were no such supporting medical records. Plaintiff was diagnosed with fibromyalgia by her primary care physician, and no referrals to specialists (such as a rheumatologist) and no referrals for pain management are found in the record.

form are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record. *See Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (*citing Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004)).

Plaintiff also alleges that the ALJ failed to incorporate the Plaintiff's debilitating issues with her hands into the RFC determination.  To the contrary, in making the RFC determination, the ALJ specifically noted Plaintiff's 2005 diagnosis of carpal tunnel syndrome and her 2006 carpal tunnel release surgeries. (Tr. 15)  He also noted that the medical records show that Plaintiff responded well to the surgery and returned to work with no limitations noted in the record. (Tr. 15)  While Plaintiff complained of swelling in her hands, Dr. Hoyt's assessment that Plaintiff was limited in pushing and pulling with both her right and left hands, was the only medical evidence supporting her complaints related to her hands.  For the reasons set forth and discussed in detail above, Dr. Hoyt's checkbox form was not given controlling weight.

Plaintiff further alleges that the ALJ erred in failing to consider all of the combined effects of her impairments in making his RFC determination.  When a Plaintiff has multiple impairments, the ALJ is required to consider the combined effect of those impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 CFR §§ 404.1523. Here, in reviewing Plaintiff's claimed impairments, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20. CFR Part 404, Subpart P, Appendix 1. (Tr. 12)

The ALJ also found that in making his RFC determination, he "must consider all of the claimant's impairments, including impairments that are not severe." (Tr. 10) He further found, "[a]fter consideration of the entire record," Plaintiff had the RFC to perform light work with certain exceptions. (Tr. 14) The ALJ proceeded, finding that while Plaintiff was unable to perform her

past relevant work, considering Plaintiff's age, education, work experience, and RFC, there were other jobs in the economy that Plaintiff could perform. (Tr. 18) These statements are sufficient in the Eighth Circuit to establish that the ALJ properly considered the combined effect of Plaintiff's impairments. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (holding that statements such as "the evidence *as a whole* does not show that the claimant's *symptoms* ... preclude his past work as a janitor" and "[t]he claimant's *impairments* do not prevent him from performing janitorial work ..." sufficiently establish that the ALJ properly considered the combined effects of the plaintiff's impairments).

Furthermore, as discussed above, the ALJ properly considered the medical evidence regarding Plaintiff's physical impairments, including Plaintiff's impairments that were not severe, when making the RFC determination.  (Tr. 15) In addition to the swelling in Plaintiff's hands, the ALJ also considered Plaintiff's complaints of pain in her bones and noted Dr. Hoyt's diagnosis of fibromyalgia. (Tr. 15) The ALJ also noted that this diagnosis was given despite radiological studies, examination, and laboratory testing that was generally negative. (Tr. 15) The ALJ also considered Plaintiff's medical history of treatment for depression and anxiety. (Tr. 16) Specifically, Gene Chambers, Ph.D., conducted a Mental Diagnostic Evaluation of Plaintiff on September 22, 2010, which was outside the relevant time period. (Tr. 264-268) During that evaluation, Plaintiff shared that she was laid off from her job at Long John Silver's restaurant due to a conflict with her boss that resulted in her suffering a panic attack. (Tr. 264) Dr. Chambers determined that Plaintiff's capacity to attend and sustain concentration on basic tasks to be within normal limits. (Tr. 267)  Further, medical records indicate that Dr. Hoyt continuously treated Plaintiff with medication for her depression and anxiety; however, there was no evidence in the

records that Plaintiff underwent additional treatment or therapy for her mental conditions. (Tr. 76, 77)

Plaintiff's work history is also consistent with the ALJ's RFC determination. Plaintiff reported to Dr. Chambers that she was laid off from her job at Long John Silver's due to an unresolvable conflict with her boss, rather than as a result of her medical conditions. (Tr. 264) Furthermore, during the relevant time period, Plaintiff returned to part time work cleaning a commercial office space. (Tr. 71, 81) *See Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (ALJ properly considered Medhaug's employment positions maintained after his alleged onset of disability, because "[w]orking generally demonstrates an ability to perform a substantial gainful activity").

Upon careful review of the record, the Court finds there is substantial evidence to support the ALJ's RFC determination of light work with the limitations set forth above.

## IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB benefits. The ALJ's Decision should be, and it hereby is, affirmed.  Plaintiff's Complaint should be dismissed with prejudice.

DATED this 18th day of March, 2016.

/s/ Mark E. Ford
HONORABLE MARK. E. FORD
UNITED STATES MAGISTRATE JUDGE